DECISION
Defendants Mortgage Electronic Registration Systems, Inc. (MERS), Green Tree Servicing, LLC (Green Tree), and Federal National Mortgage Association (FNMA) (collectively, Defendants) jointly move to dismiss Plaintiff Michael Kriegel's (Plaintiff) Complaint (Complaint) for a declaratory judgment and petition to quiet title to certain real property. The gravaman of the Complaint concerns the effect of the language contained in the original mortgage as well as the rights of successors of the mortgage and the mortgage debt. The ultimate consequence, according to the Complaint, is that the foreclosing party had no right to exercise the statutory power of sale, thus rendering the foreclosure sale a nullity.
 I Facts Procedural History
On September 26, 2008, Plaintiff executed a note and mortgage in favor of lender BankUnited, FSB (BankUnited), with respect to a mortgage loan in the amount of $182,000.[1] *Page 2 
(Compl. ¶¶ 2, 10.) The note was secured by a mortgage on Plaintiffs property at 287 Waseca Avenue, Barrington, Rhode Island. The Mortgage provides that BankUnited (the original lender) "mortgage, grant, and convey the mortgagee interest to Defendant MERS and MERS' successors and assigns, and appoints MERS as the nominee for lender and its successors and assigns." (Compl. Ex. 2 at 3). At the time of Plaintiffs execution of the Note and Mortgage the Court finds that MERS is both the lender as nominee of BankUnited and the mortgagee, entitled to exercise the statutory power of sale contained therein. Plaintiff signed the note and mortgage as mortgagor and obligor under the note. (Compl. Ex. 2 at 1-3, hereinafter Mortgage.)
On October 20, 2009, MERS, as the mortgagee and nominee for BankUnited, executed an assignment of the Mortgage to FNMA, recording the assignment in the land evidence records of the town of Barrington. (Compl. Ex. 3.) On November 29, 2010, Green Tree conducted a foreclosure sale on behalf of FNMA. FNMA, prior to Green Tree acting on its behalf, was the Mortgagee by assignment from MERS and successor to MERS as nominee of BankUnited, the lender. On December 7, 2010, Plaintiff filed the Complaint, seeking nullification of the foreclosure sale and return of title to him. Count I of Plaintiffs Complaint is a claim for "Injunctive Relief and Declaratory Judgment." (Compl. p. 6.) Count II is a claim for "Quieting Title." (Compl. p. 7.) Count III asserts a claim of "Negligent Misrepresentation." (Compl. p. 8.)
Defendants filed this Motion to Dismiss on January 24, 2011.[2]
The parties were *Page 3 
heard on April 26, 2011. At the hearing, Plaintiff, through Counsel, informed the Court that he was not pursuing the claim for Negligent Misrepresentation. Accordingly the Court will limit its review of the motion to dismiss as pertaining only to Counts I and II of the complaint.
 II Standard of Review
"The `sole function of a motion to dismiss' pursuant to Rule 12(b)(6) is `to test the sufficiency of the complaint.'"McKenna v. Williams, 874 A.2d 217, 225 (R.I. 2005) (quotingRhode Island Affiliate, ACLU, Inc. v. Bernasconi,557 A.2d 1232, 1232 (R.I. 1989)). For purposes of the motion the Court "assumes the allegations contained in the complaint to be true and views the facts in the light most favorable to the plaintiffs."Giuliano v. Pastina, Jr.,793 A.2d 1035, 1036-37 (R.I. 2002) (quotation omitted). The motion "should be granted only when it is clear beyond a reasonable doubt that the plaintiff would not be entitled to relief under any set of facts that could be proven in support of the claim."Siena, M.D. v. Microsoft Corp.,796 A.2d 461, 463 (R.I. 2002) (citation omitted).
Ordinarily, the Court's review of a motion to dismiss is confined to the complaint, Barrette v. Yakavonis,966 A.2d 1231, 1234 (R.I. 2009), and if the Court goes outside the complaint, the Court must convert the motion into a motion for summary judgment. See Coia v. Stephano,511 A.2d 980 (R.I. 1986). These rules provide, however, where the pleading refers to attachments, "A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Super R. Civ. P. 10(c). The motion justice may consider and refer to documents incorporated into a complaint by reference when *Page 4 
ruling on a motion to dismiss, without converting motion into one under Rule 56. Bowen Court Assoc. v. Ernst Young, LLP,818 A.2d 721, 725-26 (R.I. 2003) (citing Super R. Civ. P. 10(c)); 27A Federal Procedure L. Ed. § 62:509 (2004). Such documents "must be referred to explicitly," and be "exhibits] annexed to the complaint." 1 Kent,R.I. Civ. Prac. § 10.3 at 100 (1969); see also 5B Wright Miller, Federal Practice Procedure, 3d § 1357 (2006). The rule permitting reference to additional documents exists because the primary problem raised by looking to documents outside the complaint — lack of notice to the plaintiff — is absent when the plaintiff has actual notice that the documents attached as exhibits to the pleading would be available for the court to consider with respect to a 12(b)(6) motion because the plaintiff framed his complaint in reliance on these documents.See In re Burlington Coat Factory,114 F.3d 1410, 1426 (3rd Cir. 1997).
Here, the Complaint expressly references the Mortgage and the assignment. The exhibits attached to the Complaint contain some pages of the Mortgage[3] and the assignment to FNMA. Defendants submitted the entire Mortgage instrument and assignment to FNMA to its motion.[4]
This Court will consider "documents expressly relied upon or integral to the complaint and matters of public record, if the claims of plaintiff are based upon such documents." Rowe v.Morgan Stanley, 191 F.R.D. 398, 405 (D. N.J. 1999); seealso Burlington Coat Factory, 114 F.3d at 1426; BowenCourt, 818 A.2d at 725-26. Plaintiffs Complaint to void the foreclosure sale expressly references, and certainly finds its basis in the Mortgage, which contained the initial reference to MERS as the mortgagee as well *Page 5 
as appointing MERS as the nominee for Lender and Lender's successors and assigns, and the subsequent assignment from MERS to FNMA, both of which are, at least in part, presently before this Court as attachments to the Complaint. See
Cmpl. Ex. 2 at 1, 3, ex. 3. In the interest of completeness, the Court may refer to the additional pages of the Mortgage that Defendants submitted, should they become relevant. Accordingly, this Court may properly consider these documents in their entirety without converting the motion into one for summary judgment.See Burlington Coat Factory, 114 F.3d at 1426.
Furthermore, Plaintiff has been afforded proper notice that these attached materials may be considered by the Court. Defendant's motion was filed on January 24, 2011. Plaintiff filed a written objection to the instant motion, but neither in the written objection, nor at the hearing, did Plaintiff suggest that the Court disregard any exhibits. Both parties appeared for arguments on this motion on April 26, 2011.
 III Analysis
In Payette v. Mortgage Electronic Registration Systems, No. PC-2009-5875 (R.I. Super. August 22, 2001), this Court expanded upon its previous rulings and reasoning in Porter v. First NCLFinancial Services, No. PC-10-2526, 2011 WL 1251246
(R.I. Super. March 31, 2011), and Bucci v. Lehman Bros. Bank, No. PC-2009-3888, 2009 WL 3328373 (R.I. Super. August 25, 2009). InPayette, Porter, and Bucci, this Court ruled as a matter of law that the foreclosure sales conducted by MERS or one of MERS' assignees were valid. Construing the facts alleged in the Complaint in Plaintiff's favor to the extent that the materials permit, this Court will follow the results and reasoning in thePayette, Porter, and Bucci cases. The Court will address any additional issues that are unique to *Page 6 
this case that were not discussed in the aforementioned decisions.
 A BankUnited's Designation of MERS as the Mortgagee in the Mortgage Instrument
Plaintiff alleges that BankUnited's designation of MERS as mortgagee was contractually invalid (Compl. ¶¶ 14, 19-21) and legally invalid (Compl. ¶¶ 22-23, 48). Plaintiff argues that these allegations should be considered in connection with his claims for declaratory (quiet title) relief. The Mortgage at issue here contains the identical operative language as the mortgages considered in Bucci, Porter, and Payette. In accordance with the reasoning in those cases, "it is clear beyond a reasonable doubt that the plaintiff would not be entitled to relief under any set of facts that could be proven in support of the claim." Siena, M.D., 796 A.2d at 463 (citation omitted).
The Mortgage, a portion of which Plaintiff attached to the Complaint, belies Plaintiff's claim that BankUnited's designation of MERS as mortgagee and nominee for Lender and Lender's successors and assigns was contractually invalid. Despite the sweeping language of the forgiving standard of review applicable here, not all factual allegations are entitled to favorable construction. The Court will not accept as true "facts which are legally impossible, . . . or facts which by the record or a document attached to the complaint appear to be unfounded." 27A Fed. Proc., L.Ed. § 62:509 (1996). "In the case of conflict between the pleading and the exhibit, the exhibit controls." 1 Kent,R.I. Civ. Prac. § 10.3 at 100; see also
Wright Miller § 1357.
Plaintiff claims that he "was misled by BankUnited into believing that Bank United was his actual mortgagee and claiming that no mention was ever made of MERS *Page 7 
at the closing. . . ." (Compl. ¶ 14.) This statement, even if true, conflicts with the clear and unambiguous language in the Mortgage instrument signed by Plaintiff that designated MERS as the mortgagee and nominee to the lender numerous times. For example, page 1 of the Mortgage recites that "MERS is the mortgagee under this Security Instrument." Further, page 3 of the Mortgage — which Plaintiff quoted in the Complaint (Compl. ¶ 15) — states that Plaintiff "does hereby mortgage, grant and convey to MERS . . . and to the successors and assigns of MERS, with Mortgage Covenants upon the Statutory Condition and with the Statutory Power of Sale, the property." It is clear beyond a reasonable doubt that BankUnited's designation of MERS as mortgagee is binding as Plaintiff acknowledged by his signature thereon. See McBurney v.Teixiera, 875 A.2d 439, 443 (R.I. 2005) (holding "[i]f the court finds that the terms of an agreement are clear and unambiguous, the task of judicial construction is at an end and the agreement must be applied as written."). Therefore, Plaintiff's claim for declaratory and quiet title relief on this basis must be dismissed.
Plaintiff also claims that BankUnited was legally prohibited from designating MERS as the mortgagee because the designation disconnected the note and the Mortgage, thereby voiding the note and Mortgage. (Compl. ¶¶ 26, 48.) Defendants contend that, pursuant toBucci and Porter, the assignment of a mortgage to MERStogether with the designation of MERS as nominee for Lender andLender's successors and assigns does not disconnect a note from theMortgage as a matter of law. Furthermore, pursuant to Rhode Island law, G.L. 1956 § 34-11-24, entitled "Effect of assignment of mortgage", which provides, "an assignment of mortgage . . . shall . . . have the force and effect of granting, bargaining, transferring and making over to the assignee, . . . the mortgage *Page 8 
deed with the note and debt thereby secured, . . .".
It is clear beyond a reasonable doubt that Plaintiff cannot prevail on this claim. In Payette, this Court held that, pursuant to Porter and Bucci, an assignment of the mortgage to MERS together with the designation of MERS, as the nominee of lender and lender's successors and assignees, having language identical to the Mortgage language at hand, does not fatally disconnect a note from a mortgage. In Bucci, this Court adopted the reasoning of In re Huggins, in which the United States Bankruptcy Court for the District of Massachusetts specifically held that no disconnection occurs when a borrower and lender agree to assign the mortgagee interest to MERS and appoint MERS as the lender's nominee. Bucci, No. PC-2009-3888, 2009 WL 3328373 *7 (citing In re Huggins,357 B.R. 180, 184 (Bankr. D. Mass 2006)).
This Court elaborated upon this legal question inPayette, specifically adopting "the voluminous and well-reasoned authority" of diverse jurisdictions that have found that no disconnection occurs under these circumstances.Payette, No. PC-2009-5875 (citing Bassilla et. al. v. GMACMortgage, et. al., No. 09-J-519 (Ma. App.Ct. Dec. 4, 2009);Jackson v. Mortgage Elec. Registration Sys., Inc.,770 N.W.2d 487 (Minn. S. Ct. 2009); U.S. Bank Nat'lAssoc. v. Flynn, 27 Misc.3d 802, 897 N.Y.S.2d 855 (N.Y. Sup, 2010); Silvia Merino, et. al. v. EMC Mortgage Corp., et.al., 2010 WL 1039842 (E.D.Va., 2010). Therefore, the Court finds that it is clear beyond a reasonable doubt that Plaintiff would not be entitled to relief under any set of facts relating to the claim that the designations set forth in the mortgage instrument, as accepted and signed by the Plaintiff, run contrary to Plaintiff's position that such designation by the lender of MERS as mortgagee and nominee for Lenders was legally defective.Siena, M.D., 796 A.2d at 463. *Page 9 Infra, Due to the explicit provision of the mortgage instrument, Plaintiff's claim that BankUnited's designation of MERS as mortgagee and lender's nominee, does not as a matter of law, cause a fatal defect in the foreclosure.
 B Standing Regarding MERS Assignment to FNMA
Defendants argue that Plaintiff's claims must be dismissed because Plaintiff lacks standing to seek declaratory relief and quiet title to the property by alleging that MERS' assignment of the Mortgage to FNMA was invalid. In this analysis, the Court must accept that as to MERS' assignment to FNMA, MERS acted as assignor to the interests it had. Plaintiff argues that he has standing to seek a declaration of his rights in the property in that Plaintiff's claim to title has been affected by the assignments of the mortgage and because Plaintiff owned the property that was the subject matter of the assignment.
In Payette, this Court held that the homeowner lacked standing to challenge the propriety of MERS' assignment of a mortgage. No. PC-2011-5875, at 15 (R.I. Super. August 22, 2011).Payette was decided on summary judgment. However, because standing does not raise a question going to the merits of the controversy, it is also appropriately raised on a motion to dismiss. Wright Miller § 1360; Mageau v. Schiedler,651 A.2d 1226 (R.I. 1994) (upholding trial justice's 12(b)(6) dismissal on standing grounds).
To find standing, the Court must inquire into "whether the plaintiff alleges that the challenged action has caused him injury in fact, economic or otherwise." Pontbriand v. Sundlun,699 A.2d 856, 862 (R.I. 1997) (quotations omitted). One well-settled aspect *Page 10 
of standing is "`the general prohibition on a litigant's [standing] to raise another person's legal rights. . . .'" Osediacz v. Cityof Cranston, 414 F.3d 136, 139 (1st Cir. 2005) (quotingAllen v. Wright, 468 U.S. 737, 750 (1984)). The assignment from MERS to FNMA did not cause injury in fact to the Plaintiff, as the assignment did not change his obligation to timely pay the Mortgage Note or suffer the consequences of foreclosure.
Plaintiff claims he is entitled to a declaration that the foreclosure sale was invalid, his obligations are void, and that title to the property should be returned to him based upon the contention that MERS' assignment of the mortgage to FNMA was improper. Specifically, Plaintiff claims that (1) assignment was contractually prohibited; (Compl. ¶¶ 10-14, 20, 36) (2) legally prohibited; (Compl. ¶ 48); and (3) was the result of fraud (Compl. ¶ 27-31).
It is undisputed, and clear as set forth in the Complaint, that Plaintiff is not a party to the MERS-FNMA assignment. Defendants thus correctly assert that Plaintiff was a stranger to that assignment and consequently lacks standing to contest the legal rights of an assignee under these documents. "[A]n assignment generally requires neither the knowledge nor the assent of the obligor, [and] because an assignment cannot change the obligor's performance." 6 Am. Jur. 2d Assignments § 2; seeBrough v. Foley, 525 A.2d 919 (R.I. 1987); see alsoFryzel v. Mortgage Elec. Registration Sys.,2011 U.S. Dist. LEXIS 95114 (D.R.I. June 10, 2011) (holding that property owner lacked standing to challenge assignment of his mortgage to a subsequent entity); Liviona Prop. Holdings,LLC v. 12840 Farmington Rd. Holdings LLC,717 F.Supp.2d 724 (E.D. Mich. 2010) (holding that property owner lacked standing to challenge assignment of his mortgage to a subsequent entity). *Page 11 
In Brough, our Supreme Court held that a third party did not have standing to challenge the assignment of a contractual right from one obligee to another. Id. at 921-22. The subject matter of the contract in Brough was a right of first refusal to purchase property. Here, the subject matter of the assignment is the mortgagee's interest in the subject real property and the right to exercise the statutory power of sale contained in the Mortgage. Plaintiff argues that this fact distinguishes the instant matter from Brough and compels a finding of standing. Plaintiff cited no law on the general proposition that the subject matter of an assignment affects a third party's standing to challenge that assignment. Plaintiff cited no law relating to the specific facts herein, that the right to exercise the statutory power of sale touches upon the rights of the owner of the secured property and therefore changes the standing analysis. The Court finds this unsupported argument insufficient to justify abrogating the well-settled Brough rule. Moreover, the Court finds theLivonia analysis on standing persuasive because inLivonia, the United States District Court for the Eastern District of Michigan explained this rule in the MERS-assignment context. "[T]he validity of the assignments does not effectwhether Borrower owes its obligations, but only towhom Borrower is obligated."717 F.Supp.2d at 735 (emphasis in original). Because the borrower's obligation itself does not change, the borrower "may not assert any ground which may render the assignment voidable . . . for example, [borrower] cannot raise alleged acts of fraud, or question the motive or purpose underlying an assignment."Id. at 735-36 (citing 6A C.J.S.Assignments § 132).
Plaintiff further argues that his standing to challenge the validity of the mortgage and the assignment is recognized by G.L. 1956 § 34-16-4, entitled "Action brought by person claiming through conveyance, devise, or inheritance." This statute provides that *Page 12 
"[a]ny person or persons claiming title to real estate, or any interest or estate, legal or equitable, in real estate, . . . may bring a civil action . . . to determine the validity of his, her, or their title or estate therein." Section 34-16-4. Although the Court agrees that Section 34-16-4 confers subject matter jurisdiction on the Superior Court to determine issues of title to real property, however, that does not mean Section 34-16-4 confers standing on an individual plaintiff, who is not a party to an assignment, to challenge its validity.
Section 34-16-4 does not provide Plaintiff with standing to sue but only serves as the legal basis for a plaintiff who already has standing to obtain declaratory relief. Fryzel v. Mortgage Elec.Registration Sys.,2011 U.S. Dist. LEXIS 95114 *47 (D.R.I. June 10, 2011). Section 34-16-4 presents a vehicle through which Plaintiff can affirm title to real estate, but this statute does not provide the Plaintiff with standing to challenge the propriety of an assignment of the Mortgage. Section 34-16-4 "does not excuse the requirement that Plaintiff demonstrate standing [to challenge an assignment] in order for this Court to adjudicate this action for declaratory relief." Fryzel v. Mortgage Elec. Registration Sys.,2011 U.S. Dist. LEXIS 95114 *47 (D.R.I. June 10, 2011).
Thus, Plaintiff, a stranger to the assignment of the mortgage from MERS to FNMA, lacks standing to challenge the propriety of the assignment and the effect it may have on the exercise of the Statutory Power of Sale. (Compl. ¶¶ 10-14, 20, 23-25, 27-33, 48.) Plaintiff also lacks standing to challenge FNMA's arrangement to have Green Tree service the Mortgage because Plaintiff was also a stranger to this transaction. (Compl. ¶ 33.)
The rationale of excluding homeowners/debtors from interfering with legitimate *Page 13 
commercial transactions between financial institutions is entirely consistent with this Court's determination that the commercial transfer of the Mortgage — to which Plaintiff clearly acquiesced according the to plain and unambiguous language contained in the Mortgage — was entirely lawful. The dispute as to how the foreclosure proceeds are distributed is not the concern of the borrower as long as the foreclosure results in a credit to the borrower for the amount of the proceeds realized from the sale in relation to the loan balance due on the "mortgage debt".See Sharon McGann HorstKamp, MERS Case Law Overview, 64 Consumer Fin. L.Q. Rep. 458 (quoting Mortgage Elec.Registration Sys., Inc. v. Schroeder and Am. Gen. Fin., Inc., No. 04cv-J942 (Wis. Cir. Ct., Branch 31, Milwaukee County June 23, 2005) (describing Wisconsin trial court's holding that "[r]es judicata will act as a bar to Lender to pursue any judgment because the Lender, is a party in privity with MERS according to the Mortgage.")).
However, Plaintiff is not without standing to assert all of his claims. Plaintiff alleges he is entitled to relief because the original Mortgage instrument was a legal nullity at its inception, despite Plaintiff's acquiescence therein. Specifically, Plaintiff alleges that he did not give BankUnited permission to designate MERS as mortgagee[5] (Compl. ¶ 10, 14) and even if Plaintiff did agree to the designation (Compl. ¶ 15), this contractually-permitted action disconnected the note and Mortgage, thereby voiding those obligations and eliminating Defendants' interests in the property (Compl. ¶¶ 26, 48). Plaintiff alleges, and the exhibits attached to the Complaint confirm, that Plaintiff acknowledged the right of BankUnited to assign its interests. It has never been disputed that the *Page 14 
assignee of an instrument has all the rights and obligations of an assignor. In other words, the black letter law that the "assignee steps into the shoes of the assignor and can avail itself of the assignor's rights." Weybosset Hill Investments, LLC v.Rossi, 857 A.2d 231, 240 (R.I. 2004). Thus, Plaintiff has standing to challenge the legal significance of this initial designation of MERS as mortgagee as he was a party to this transaction by reason of his signature on the Mortgage.
Plaintiff also bases his claims for declaratory and quiet title relief on an allegation that arises out of neither the initial designation to MERS nor the subsequent assignment to FNMA. Plaintiff claims that the foreclosure was invalid because the foreclosing party, GreenTree, did not have the authority to exercise the statutory power of sale, in that GreenTree was not a proper party authorized to foreclose as contemplated in either the Mortgage or Rhode Island General Laws[6] § 34-11-21, 22 (Compl. ¶¶ 12, 34-35, 37-46, 50).[7]
As was discussed earlier with respect to challenge of assignments, Plaintiff lacks standing to challenge Green Tree's servicing arrangement with Fannie Mae. However, even if the Court were to find Plaintiff has standing to raise this issue, the Court would nonetheless dismiss the claim because "as assignee [Fannie Mae] steps into the shoes of the assignor and can avail itself of the assignor's rights," including its rights to engage an agent to act on its behalf as to all aspects of the mortgage. Weybosset HillInvestments, LLC v. Rossi, 857 A.2d 231, 240 (R.I. 2004). Plaintiff also challenges the exercise by Green Tree of the statutory power of sale and because the foreclosing party, Green Tree, *Page 15 
did not hold the note. (Compl. ¶¶ 18, 26, 45, 46, 47). In the past, this court has reasoned "since plaintiff specifically and expressly agreed by [her] execution of the mortgage that [MERS] could act as mortgagee and nominee of the lender, and its successors and assigns, [she] cannot now contend that [MERS] did not have the right to initiate foreclosure proceedings. Porter v. First NLC FinancialServices, No. PC-10-2526, 2011 WL 1251246
(R.I. Super. March 31, 2001). Thus, Green Tree, as servicer for FNMA (an assignee of MERS) had the statutory power to foreclose as agent for the assignee FNMA (as successor mortgagee and nominee of the lender).
 C Green Tree's Authority To Exercise the Statutory Power ofSale
Plaintiff contends that he has stated a claim for declaratory and quiet title relief because Plaintiff asserted three reasons why GreenTree's foreclosure sale is void. Plaintiff claims that GreenTree's foreclosure sale clouded Plaintiff's title to the property because (1) GreenTree was not a "Lender" permitted to foreclose as contemplated in the Mortgage agreement; (2) GreenTree was not a "Lender" permitted to foreclose as contemplated in Chapter 11 of Title 34 of the Rhode Island General Laws; and (3) GreenTree did not hold the note.
Plaintiff first claims that only the "Lender" is permitted to foreclose pursuant to the Mortgage agreement. (Compl. ¶¶ 12, 34-35, 37-46, 50.) As noted, the Court will not accept as true "facts which are legally impossible, . . . or facts which by the record or a document attached to the complaint appear to be unfounded." 27A Fed. Proc., L. Ed. § 62:509. This Court again notes, "In the case of conflict between the pleading and the exhibit, the exhibit controls." 1 Kent,R.I. Civ. Prac. § 10.3 at 100; see also Wright *Page 16 Miller § 1357. Once the lender designates MERS as its nominee, MERS, and thus any assignee of MERS, also acts as the holder of the debt secured by the mortgage.
Plaintiff claims that "[t]he Mortgage does not state anywhere that the mortgagee or its assigns may invoke the Statutory Power of Sale." (Compl. ¶ 36.) This allegation stands in direct contrast to the clear and unambiguous language of the Mortgage to which Plaintiff agreed to not only by his signature, but also by initialing every page. Plaintiff even quoted language from page 3 of the Mortgage (Compl. ¶ 15), the page upon which it is repeatedly stated that the mortgagee or its assigns may invoke the Statutory Power of sale. Specifically, page 3 of the Mortgage states that Plaintiff "does hereby mortgage, grant and convey to MERS . . . and to the successors and assigns of MERS, . . . the Statutory Power of Sale. . . ." Moreover, the Mortgage also states "Borrower understands and agrees that . . . MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property." Thus, Plaintiff's claim that the foreclosure sale conducted by Green Tree, as servicer of MERS' assignee FNMA, was contractually invalid must be dismissed as it is factually and legally unfounded. 27A Fed. Proc., L.Ed. § 62:509.
Plaintiff further bases his argument that only the "Lender" is permitted to foreclose pursuit to Chapter 11 of Title 34 of the Rhode Island General Laws (Compl. ¶¶ 33, 46-49). Plaintiff's myopic reading of Chapter 11 fails to state a claim for declaratory or quiet title relief. The Court has previously addressed this contention and found no merit to Plaintiff's construction of Chapter 11 of Title 34. The Court finds that Plaintiff has failed to state a claim that the foreclosure sale by GreenTree, acting on behalf of *Page 17 
FNMA, was void either under the Mortgage language or § 34-11-1 et seq. in accordance with this Court's holdings inPorter and Bucci. See Porter, No. PC-10-2526, 2011 WL 1251246 at * 4-5; Bucci, No. 2009-3888, 2009 WL 3328373 at * 6-7. At the time of the foreclosure, GreenTree exercised all of the rights of FNMA as assignee of the Mortgage and nominee for the lender. Consequently, bearing in mind that the assignment of the mortgage to FNMA was a legitimate commercial transaction to which the Plaintiff lacks standing to invalidate, FNMA in turn hired GreenTree to service the mortgage. This Court finds that it is clear beyond a reasonable doubt that GreenTree, acting on behalf of FNMA, the holder of the mortgage and nominee to the lender at the time of the foreclosure sale, was properly authorized to exercise the statutory power of sale when Plaintiff defaulted on its payment obligation under the Note. See Bucci, No. 2009-3888, 2009 WL 3328373 at *7 (This court finds that § 34-11-21 does not prohibit MERS or its assignees from invoking the Statutory Power of Sale).
Plaintiff's final claim for declaratory and quiet title relief alleges that the foreclosure sale was invalid because GreenTree does not possess the note. The note is not part of the record before this Court.
Nonetheless, the Court is satisfied that Plaintiff has failed to allege any facts that, if proven, could affect the validity of the foreclosure sale. The designation of MERS in the mortgage instrument did not disconnect the note and Mortgage. The Mortgage signed by Plaintiffs recognized MERS' rights to act as nominee for the lender and lender's "successors and assigns." (Mortgage p. 3.) MERS then assigned its mortgagee and nominee interest to FNMA. Thus, whatever financial entity currently holds the beneficial interest in the note, in this case FNMA as mortgagee and nominee of the lender, may *Page 18 
enlist a servicer, such as GreenTree, to act as its agent[8]. FNMA is the mortgagee for and nominee of the lender based upon the broad language contained in the Mortgage Instrument. Porter, No. PC-10-2526, 2011 WL 1251246 at *4; see also Sharon McGann HorstKamp, MERS Case Law Overview, 64 Consumer Fin. L.Q. Rep. 458 (quoting Mortgage Elec. Registration Sys.,Inc. v. Schroeder Am. Gen. Fin., Inc., No. 04cv-J942 (Wis. Cir. Ct., Branch 31, Milwaukee County June 23, 2005) (describing Wisconsin trial court's holding that "[r]es judicata will act as a bar to Lender to pursue any judgment because the Lender, is a party in privity with MERS according to the Mortgage"). Plaintiff has failed to assert an actionable claim for declaratory and quite title relief.
 CONCLUSION
Defendant's Motion to Dismiss is GRANTED. Counsel for the prevailing party shall submit an Order in accordance with this decision.
[1] BankUnited is not named as a defendant in the Complaint.
[2] There is no evidence in the record, nor any reference in the docket sheet, that Defendants were served with a copy of the complaint and summons. However, defendant's motion does not assert failure of service, as a ground for dismissal of the complaint.See Super. R. Civ. P. 12(b)(4), (5).
[3] Plaintiff attached pages 1-3 and 9-12 of the Mortgage to the Complaint.
[4] There is no evidence of the promissory note in the record.
[5] The explicit terms of the mortgage — approved by Plaintiff — provided that, "MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument."
[6] This Court notes however that R.I.G.L. § 34-26-8(a)(4) defines "mortgagee" as the . . . if the mortgage has been serviced by a mortgage servicer,"Mortgagee" means the mortgage servicer. (Emphasis added.)
[7] Plaintiff points to no law or contractual language that prohibits the party holding mortgage interest to engage a servicing company to act on behalf of the mortgagee as its agent. InBucci, the court concluded that named mortgagees and lenders are not precluded from employing servicers to service and collect obligations secured by real estate mortgages, [including but not limited to the exercise of the Statutory Power of Sale].Bucci, No. PC-2009-3888, 2009 WL 3328373 *7.
[8] In Bucci, the court rejected the argument that the General Assemby intended that the mortgagee and lender would always be one and the same. Bucci, No. PC-2009-3888, 2009 WL 3328373 *6. The court determined that § 34-11-21 did not prohibit [the service company] from invoking the Statutory Power of Sale. Id. at 7. The court reasoned that it would be an absurd result because named mortgagees and lenders would be precluded from employing servicers to service and collect obligations secured by real estate mortgages.Id. *Page 1